BURDINE v. PARTEE FLOORING MILL.

4-9294                                    234 S. W. 2d 193

Opinion delivered November 27, 1950.

*Crumpler & Eckert,* for appellant.

*Wright, Harrison, Lindsey & Upton,* for appellee.

HOLT, J. This appeal is from a judgment of the Columbia Circuit Court, affirming an award of the Arkansas Workmen's Compensation Commission, under the provisions of Act 319 of 1939 and amendments thereto.

The opinion of the Commission, November 19, 1949, recites (in part): "Finding of Fact—1. That the claimant suffered a compensable injury on February 18, 1949, from which he was temporarily totally disabled to June 7, 1949, without any residual permanent disability.

"Upon the foregoing finding of fact, the Commission bases the following 'Conclusions of Law.' It appears from the evidence before the Commission that this claimant did suffer an accidental injury arising out of and in the course of his employment by a series of traumas, the last being on February 18, 1949, which culminated in disability on that date; that the accidental injury sustained was in the nature of a traumatic bursitis and tomosynovitis of the right little finger caused from long use of a carpenter's hammer. Such a condition is set out in § 14 (a) (5) (4) of the Act and is listed as an occupational disease, which, under our Act, is an accidental injury.

"It appears from the medical evidence that the claimant's period of disability extended from February 18, 1949, to June 7, 1949, and that he was released by the attending physician as able to return to work, and from the medical evidence it is found that the claimant had no residual permanent disability resulting from the accidental injury.

"Upon consideration, therefore, the Commission directs that there issue the following award.

"The respondents will pay to the claimant compensation at the rate of $25 per week from February 19, 1949, to June 7, 1949, covering the period of temporary total

disability resulting from the accidental injury, together with all medical and hospital expenses in connection with the accidental injury, etc.''

Appellant argues there is but one question in issue, ''that is whether . . . where the sole medical expert testifying stated that there was permanent partial disability to the claimant, and where there was no other evidence presented on the question of claimant's disability, whether under those circumstances, the Arkansas Workmen's Compensation Commission can properly find that there was no permanent partial disability to the claimant.''

Appellees, on the other hand, contend that ''weighing the probabilities of a permanent injury was within the exclusive province of the Workmen's Compensation Commission. The question for decision is whether the refusal of the Commission to award compensation for permanent disability was supported by substantial evidence.''

From the record presented, the question for our determination is one of fact and ''the rule is firmly established that the findings of the Commission, which is the trier of the facts, will not be disturbed on appeal to the Circuit Court if supported by substantial testimony.'' *Meyer* v. *Seismograph Service Corporation,* 209 Ark. 168, 189 S. W. 2d 794.

The only expert testimony presented is that of Dr. E. G. Burt, who testified: ''Q. Have you examined him recently? A. A week or ten days ago. Q. What did you find then? A. He still has some thickening of the tissues there and I still feel like I can feel that bone there but I got to convince myself I can't but it seems to me like that bone is a little enlarged there but I guess I will have to accept the X-ray evidence that it is not enlarged. Q. Upon the basis of your examination and findings, what are the indications for the hand? Will there be or may there be some permanent injury to the muscle or structure of that part of the hand? A. Well, now, that is putting it in the fortune telling class. I am afraid from that same type of work, it would be more likely to recur. I am honest about that. If he resumed the same type of

occupation it would be more likely to recur. This might be called 'carpenter's hand,' I guess. It is new to me really but I do think he would have a reoccurrence of this if he went back to the same type of work. . . . Q. Doctor, what leads you to believe that an injury of this type would be permanent? Now, in ordinary language this man has what you have probably had and I have probably had, a stone bruise; isn't that right? A. Well, a stone bruise is usually severe enough that you will have necrossing of tissue and a relatively acute condition. Any condition is, if you get something acute, it is easier to get over than something chronic. This is more of a chronic condition as I see it where you have a thickening of tissue, muscle fibers. This part of his hand was larger than this part. Now, that has gone down considerably. In fact, it is just about like the other one. There is still a little enlarging or thickening and it has been six months and I don't know if six months more will put it down any, rather doubt it and like I say, the fact that he has had this change in the tissues would make me believe that he would be more susceptible to a reoccurrence if he subjected it to the same trauma he had before. . . . Q. As I understand it, it is your opinion that this man has twenty-five per cent. loss of use of his hand? A. For that type work. . . . Q. But it wouldn't be for the over-all operation of carpentering, doing all types of carpentering? A. No.''

As we view Dr. Burt's testimony, the Commission would have been warranted in finding that its effect, in Dr. Burt's opinion, was that appellant would be more susceptible to a recurrence of his injury should he engage in the same type of work. He was somewhat uncertain as to the permanent nature of the injury when asked (as above noted), ''Will there be, or may there be, some permanent injury to the muscle or structure of that part of the hand?'' His answer is: ''Well, now, that is putting it in the fortune telling class. . . . It is new to me really, etc.''

We cannot say that the Commission (and the Circuit Court on appeal) was compelled to draw but one infer-

ence from the testimony and bound to find that appellant's injury was of a permanent nature and his wage earning capacity permanently impaired. It appears to us that the most that can be said of it is that there might be a recurrence causing disability as defined by the Statute, Ark. Stats., § 81-1302 (e): "The term 'Disability' means incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury."

We do not have here a case wherein the expert testimony can be held to be uncontradicted: " 'Moreover, were it conceded that all the expert witnesses introduced in the case agreed upon conclusions as argued by appellant, the jury would not necessarily have to so find the facts to be, because such testimony may be controverted by any other competent evidence.' *St. Paul Fire & Marine Ins. Co.* v. *Green,* 181 Ark. 1096, 29 S. W. 2d 304. Not only this, but, were it conceded that all the expert testimony offered by both parties was in full accord and agreement and not contradicted by any other expert evidence, yet the jury would not be bound by such testimony. 11 R. C. L., 586, states the rule as follows: 'Even if several competent experts concur in their opinion, and no opposing expert evidence is offered, the jury are still bound to decide the issue upon their own fair judgment.' " *Arkansas Power & Light Company* v. *Bollen,* 199 Ark. 566, 134 S. W. 2d 585.

Appellant testified before the Commission. It had the opportunity to observe his hand for evidence as to its use. There appears to be no evidence whether appellant's earning power had been or would be reduced.

It appearing that the Commission's findings are supported by substantial evidence, the judgment of the trial court affirming those findings must be and is affirmed.